In the Matter of Proving the Last Will and Testament of JOHN E. MATHESON, Deceased.

ANGUS G. MATHESON and Others, Appellants; SAMUEL J. MEYLER, Respondent.

Second Department, May 23, 1939.

*William A. Smith*, for the appellants.

*Joseph P. Walsh*, for the respondent.

Decree of the Surrogate's Court of Richmond county admitting to probate a will dated January 18, 1937, affirmed, with costs to all parties filing briefs, payable out of the estate. The proof presented a question of fact on the framed issues. The admission of the testimony of Thomas Kelby was proper. The Civil Practice Act (§ 354) permits an attorney or his employees to testify as to the preparation of a will whether or not the attorney is a subscribing witness thereto, thus liberalizing the rule relating to confidential communications. The decedent consulted Mr. Kelby professionally with respect to his desire to draw a will leaving the bulk of his property to the respondent and his wife. The decedent was advised by Mr. Kelby that a printed form of will might be used in an emergency when a lawyer could not be present. Three days after consultation concerning his proposed will, and in the absence of Mr. Kelby, the decedent executed the will in question on a so-called form, leaving all his property to the respondent and his wife. The circumstances enabled the surrogate, the trier of the facts, to determine as a question of fact that the consultation

with Mr. Kelby was an incident to and in preparation of the actual making and execution of the will offered for probate.

HAGARTY, JOHNSTON and TAYLOR, JJ., concur; LAZANSKY, P. J., dissents and votes to reverse and order a new trial, with opinion; CLCSE, J., concurs with LAZANSKY, P. J.

LAZANSKY, P. J. (dissenting). On the trial of this probate proceeding there was a very close issue as to mental competency and undue influence. The opinion of the learned surrogate indicates that the balance in favor of admitting the will to probate was turned in a large measure by the testimony of Mr. Thomas Kelby, a lawyer, practicing in Brooklyn for about forty-six years. He had represented decedent for about five years before his death. Such testimony was not merely cumulative.

Appellants urge that the testimony of Mr. Kelby was inadmissible under section 353 of the Civil Practice Act. Respondent insists that the testimony was valid under section 354 of the Civil Practice Act.

Mr. Kelby testified that when he was alone with the decedent on January 15, 1937, the latter told him that he wanted to leave the bulk of his property to Sam and his wife. Samuel J. Meyler and his wife, Ruth, are the beneficiaries of the will admitted to probate. Mr. Kelby asked him if he wished to leave something to somebody else and the decedent said, " If there would be anybody worthy." Mr. Kelby asked him to tell their names and what he wished to leave them, and he would draw the will up then. To this decedent made no reply. Mr. Kelby asked him if he knew at that time who these other people were to whom he might wish to give something, and decedent either nodded his head or said " No." Mr. Kelby told him that if he could not tell him the names of these people he would not be able to draw his will at that time, and decedent said, " There will be time enough." Then the decedent said something about wishing to have an accounting from Sam. Mr. Kelby told him to make his will as soon as possible and suggested that he speak to Sam and Sam would let Mr. Kelby know when decedent was ready. Thereupon Mr. Kelby departed and did not see the decedent thereafter.

On January 18, 1937, the will offered and admitted to probate was executed. It was drawn by Sam and executed under the supervision of Ruth, his wife.

In my opinion, it was error to receive Mr. Kelby's testimony. Section 353 of the Civil Practice Act prevents a lawyer from disclosing a communication made by his client or his advice given thereon in the course of his professional employment. There is an

exception provided for by section 354 which, in so far as the question under consideration is concerned, is that in the probate of a will nothing contained in section 353 shall be construed to disqualify an attorney from becoming a witness " as to the preparation and execution of the will so offered for probate." The exception means, of course, the preparation by the attorney or under his direction, and the execution under the direction of the attorney, of *the* will so offered for probate.

Mr. Kelby surely had nothing to do with the execution of *the* will. It will be assumed that the word " and " in the words quoted may be read as " or." Did Mr. Kelby participate in the preparation of *the* will admitted to probate? As stated, the will was actually physically prepared by one of the beneficiaries. To that extent, of course, Mr. Kelby did not participate in the preparation of the will. Three days before a will was actually executed he discussed with the decedent the making of a will, the terms of which in part were stated. However, this was merely the discussion of a will that might be drawn, not of one that was drawn. The testator had not concluded to make a will.

What decedent said to Mr. Kelby was not incorporated in a will with which Mr. Kelby had anything to do. The discussion between the lawyer and the client passed into nothingness when the lawyer left the client with the latter's admonition " There will be time enough." Save in some similarity of provisions, there was no connection between the discussions of lawyer and client and the will that was drawn. The one was completely independent of the other.

In its dictionary meaning " preparation " is the act or process of making ready for use. In this narrow sense, it would mean the actual physical preparation of the document. But a broader definition should be adopted here. Preparation in this connection consists in the receipt by the lawyer of instructions from the client and the setting of those instructions in legal form by the lawyer. Here Mr. Kelby did not even receive instructions. The drawing of a will was not then considered. The meeting adjourned *sine die*.

Further, if it be assumed that a decedent told his lawyer that he wished his estate to go to *A*, and the lawyer left his client without anything being done or said except the lawyer's advice to the client to draw a will at an early date and that the lawyer would await further word, and then it appeared that three days later the will was drawn by another and executed under the guidance of still another, leaving all the decedent's property not to *A* but to *B*, could it be said that the lawyer had participated in the preparation of *the* will? Surely discussion by a decedent with his lawyer

in which the decedent said that all his property was to go to a certain person cannot be said to make the lawyer a participant in the preparation of a will in which all was left to a different person. In such case the subject of discussion with the lawyer and the contents of the document executed are entirely different.

In the case at bar Mr. Kelby was told that the bulk of the decedent's estate was to go to Sam and his wife and the balance to others " if there would be anybody worthy," who, however, were unnamed. The will admitted to probate gave everything to Sam and his wife.

However, my conclusion rests upon the proposition that a lawyer who discusses the subject of a will with his client and does nothing more, and has no further connection with his client's testamentary disposition of his property, is not a party to the preparation of a will drawn three days after by another who in no wise acted under the direction or supervision of the lawyer.

There has been a tendency to limit the privilege of communications between lawyer and client but it still lives.

In view of the importance of Mr. Kelby's testimony, it may not be said that, excluding this testimony, the same result would have been reached. The decree admitting the will to probate should, therefore, be reversed and a new trial ordered.

CLOSE, J., concurs.